IN THE CIRCUIT COURT OF MINGO COUNTY, WEST VIRGINIA

STEVE BALL;

v. Civil Action No. 05-C-380

RAWL SALES AND PROCESSING Company,
a West Virginia corporation,

CA 2:05-1038

AND

MASSEY ENERGY COMPANY,
a Delaware corporation,
Defendants.

## COMPLAINT

NOW into Court through undersigned counsel comes the Plaintiffs to institute this action for (1) temporary water replacement (2) medical monitoring (3) personal injuries proximately caused by exposure to toxic substances; (4) property damage (5) abatement of public nuisance (6) violations of SCRMA (7) violations of the Groundwater Protection Act (8) violations of the Clean Water Act as a result of the Defendants' conduct.

## PARTIES

1. Steve Ball is a resident of Rawl, West Virginia. He seeks temporary water replacement, personal injury damages, property damage, medical monitoring and abatement of threats to the environment as a result of the acts and omissions of the Defendants.

2. Defendant, Massey Energy Company, is a publicly traded company duly registered in the state of Delaware. It managed, oversaw, planned, conducted, participated in, allowed and profited from negligent, dangerous, hazardous and/or

ultra-hazardous mining activities in and around Rawl for at least the last forty years.

3. Defendant, Rawl Sales and Processing Company, is a West Virginia corporation and subsidiary of Massey, with its principal place of business in Rawl, West Virginia. It conducted, participated in, allowed and profited from negligent, dangerous, hazardous and/or ultra-hazardous mining activities in and around Rawl for at least the last forty years. It operates its main processing plant in Lobata, Mingo County, West Virginia.

## EXPOSURE TO TOXIC SUBSTANCES

4. Upon information and belief, the Defendants have owned and operated a coal mining operation and processing facility in and around Rawl, West Virginia for at least forty-years.

5. Said mining operation and processing facility include a large slurry impoundment overlaying portions of the Defendants' abandoned mine works at the head of Sprouse Creek and in the watershed and vicinity of the communities of Rawl, Lick Creek, Merrimac and Sprigg.

6. Upon information and belief, during the construction of the above-mentioned slurry impoundment the Defendants drilled holes penetrating to underground mine works underlying the impoundment so that excess coal slurry would drain directly into the underground mine works.

7. Said coal mining operations include underground mine works which Defendants negligently abandoned.

8. Defendants' negligent abandonment of the mine works caused a series of underground coal seam fires which have destabilized various strata overlaying the aquifers which supply water to the wells from which the residents of Rawl, Lick Creek, Merrimac and Sprigg draw their water.

9. Upon information and belief, the Defendants drilled and operated a series of injection wells into which were pumped slurry and other toxic materials.

10. Upon information and belief, the Defendants conducted blasting operations in connection with their strip mining operations in the area of Rawl, Lick Creek, Merrimac and Sprigg. These operations destabilized various strata overlaying the aquifers which supply water to the wells from which the residents of Rawl, Lick Creek, Merrimac and Sprigg draw water.

11. Upon information and belief, Defendants' destabilization of the various strata combined with the injection well operations and the operation of the Sprouse Creek Slurry Impoundment created a completed exposure pathway from the Defendants' mining operations and its toxic discharges to the Plaintiffs' water supplies.

12. Independent scientific testing of Plaintiffs' drilled water supplies shows the presence of toxic substances including but not limited to arsenic, manganese, iron, mercury and selenium.

13. Upon information and belief, the concentrations of known human carcinogens and toxins in the drilled water supply: (1) have rendered the Plaintiffs' property virtually worthless as residential property for resale; (2) cause the diseases, cancers, maladies and injuries from which Plaintiffs suffer: and (3) makes reasonably necessary the need for Plaintiffs and the Class to undergo periodic medical monitoring to screen for the health threats these carcinogens present.

14. For a number of years, Plaintiffs have used water from drilled wells drawing from aquifers contaminated by coal slurry and other mine waste spilling from the operations of the Defendants. The groundwater contaminated by Defendants is an established human exposure pathway for the toxic substances found to exist in Plaintiffs' well water.

15. Plaintiffs have all contracted and are suffering from dread diseases and maladies including but not limited to kidney stones, kidney failure, painful urination and chronic diarrhea.

**INCREASED RISK OF CONTRACTING SERIOUS LATENT DISEASE**

16. Upon information and belief, the concentrations of known human carcinogens and toxins in the water supplies for Rawl, Lick Creek, Merrimac and Sprigg has increased the risk of dread disease and maladies including but not limited to kidney stones, gallstones, kidney cancer, liver cancer, colitis, and chronic diarrhea.

17. Upon information and belief based on scientific opinion, the occurrence of these maladies and diseases is far above what would be expected in the general population.

18. Upon information and belief, these diseases and maladies are associated with or known to be caused by exposure to the toxic substances found in the Plaintiffs' water supplies.

19. Plaintiffs have, for a period of years, suffered daily exposure to the noxious, toxic, dangerous and deadly substances found during testing of the area water groundwater supply.

20. The increased risk of disease makes it reasonably necessary for the Plaintiffs to undergo periodic diagnostic medical examinations different from what would be prescribed in the absence of exposure.

**MONITORING**

21. Plaintiffs due to their exposure to toxic substances emitted by or escaping from Defendants' mining operations, are at an increased risk of disease such that it is reasonably necessary for the Plaintiffs to undergo periodic diagnostic medical examinations different from what would be prescribed in the absence of exposure.

22. A court administered and supervised medical monitoring program to oversee and direct medical surveillance and provide for medical examinations and testing of plaintiffs which involves a protocol of periodic heavy metal, cancer and disease

screening, testing and diagnostic procedures is scientifically available, medically possible and would greatly increase the likelihood that the Plaintiffs will live full and healthy lives

**COUNT ONE- NEGLIGENCE**

23. The Plaintiffs hereby incorporate paragraphs 1 through 118.

24. Defendants owed Plaintiffs a duty of care not to expose Plaintiffs and their water supply to toxic substances.

25. The Defendants either knew or should have known that: (1) increased risk of disease and malady could follow from their coal mining, coal processing and blasting activities if conducted improperly; (2) their coal mining, coal processing and blasting activities could cause damage to water supplies and property of the Plaintiffs, and (3) such activities could result in the personal injuries suffered by Plaintiffs.

26. The pollution of Plaintiffs' wells and their resulting personal injuries, property damage and need for medical monitoring were proximately caused by the negligence of the Defendants' mining activities.

27. The conduct of Defendants as set forth herein constitutes the tort of negligence.

**COUNT TWO- STRICT LIABILITY**

28. Plaintiffs hereby incorporate paragraphs 1 through 123.

29. Defendants' mining activities are ultra-hazardous or abnormally dangerous.

30. Defendants have damaged Plaintiffs' property, caused physical harm to Plaintiffs and have prompted the need for Plaintiffs to seek a medical monitoring protocol.

31. Defendants are prima facie answerable for all damage to Plaintiffs' persons and property which is the natural consequence of their mining activities.

32. Plaintiffs' injuries described above were proximately caused by Defendants' abnormally dangerous mining activities.

33. Defendants are strictly liable for any and all personal injuries caused by exposure to toxic substances escaping or emanating from their operations in Rawl.

**COUNT THREE- NUISANCE**

34. Plaintiffs hereby incorporate paragraphs 1 through 129.

35. Defendants' mining activities constitute an unreasonable interference with the exercise of the rights common to the general public in that it significantly interferes with public health. safety and peace.

36. Defendants' conduct is continuing in nature in that it has produced a permanent or long lasting effect on Plaintiffs and their property including the Plaintiffs' rights to the use and enjoyment of their property.

37. Defendants know or have reason to know that their activities have a significant effect on public rights.

38. Defendants either have acted intentionally or it was substantially foreseeable to Defendants that their mining activities would cause harm to Plaintiffs and their property and their to use and enjoyment thereof.

39. Defendants' mining activities were the proximate cause of the nuisance upon the Plaintiffs' property.

40. The conduct of Defendants as set forth herein has created a public and private nuisance from which the Plaintiffs have derived special injuries and substantially permanent damages which cannot be fully compensated in an action at law.

## COUNT FOUR- EQUITABLE RELIEF FOR MEDICAL MONITORING

41. Plaintiffs hereby incorporate paragraphs 1 through 136.

42. Plaintiffs request the establishment of a court administered and supervised medical monitoring program to oversee and direct medical surveillance and provide for medical examinations and testing of class members.

43. Early detection of cancer and other diseases and maladies improve the prospects for cure, treatment, prolongation of life and minimization of pain and disability.

44. Given the significance and extent of the exposure to chemicals, the toxicity of the chemicals, the seriousness of the diseases for which Plaintiffs are at risk, the relative increase in the chance of onset of disease in those exposed, and the value of early diagnosis, such surveillance to monitor the effect of exposure to toxic chemicals is reasonable and necessary.

45. It would be inequitable for Plaintiffs who have been wrongfully exposed to dangerous toxins, but unable to prove that cancer or disease is likely to have to pay the expense of medical monitoring when such intervention is clearly reasonable and necessary.

## COUNT FIVE- PUNITIVE DAMAGES

46. Plaintiffs hereby incorporate paragraphs 1 through 141.

47. The conduct of Defendants as set forth herein is wanton, reckless and reprehensible. Plaintiffs and the Class are thus entitled to recover punitive damages against Defendants.

48. Defendants were grossly negligent, willful, wanton and malicious in their mining activities and in failing to warn Plaintiffs of dangers well known to Defendants, which acts exhibited a deliberate disregard for the rights and safety of Plaintiffs.

49. Defendants realized the imminence of danger to Plaintiffs and other members of the public, but continued their ultra hazardous mining activities with deliberate disregard and complete indifference and lack of concern for the probable consequences of their acts.

50. As a direct result of Defendants' deliberate disregard for the rights and safety of others, gross negligence, willful, wanton and malicious acts, and other wrongful acts, Plaintiffs suffered the injuries and dangers stated above.

51. Defendants' acts as described herein exhibited deliberate disregard for the rights and safety of others and were grossly negligent, malicious, oppressive, willful and wanton. An award of punitive and exemplary damages is therefore necessary to punish Defendants, and each of them, and to deter any reoccurrence of this intolerable conduct. Consequently, Plaintiffs are entitled to an award of punitive damages.

52. The conduct of Defendants as set forth herein is wanton, reckless and reprehensible. Plaintiffs and the Class are thus entitled to recover punitive damages against Defendants in an amount sufficient to punish Defendants for their wrongful conduct and to deter Defendants and others from similar wrongful conduct in the future.

**COUNT SIX- VIOLATIONS OF WEST VIRGINIA SURFACE COAL MINING AND RECLAMATION ACT SECTION 22-3-13**

**(General Environmental Protection Performance Standards for Surface Mining)**

53. Plaintiffs hereby incorporate paragraphs 1 through 148.

54. Defendants' mining activities constitute "surface mining operations" under the provisions of the West Virginia Surface Coal Mining and Reclamation Act.

55. In accordance with § 22-3-25, over sixty days has elapsed from the date Plaintiffs have provided written notice to Defendants of their WVSCMRA violations.

56. Pursuant to § 22-3-25, Defendants' WVSCMRA violations constitute an imminent threat to the health or safety of Plaintiffs and immediately affects

Plaintiffs' legal interests and accordingly waiver of the 60 day notice requirement is applicable.

57. Defendants' surface mining operations have impaired environmental quality, damaged the beneficial use of land or water resources, and endangered the health and safety of the public.

58. Defendants' surface mining has adversely affected public welfare and safety by destroying or diminishing the utility of Plaintiffs' land for residential use by polluting their water supply.

59. Defendants have damaged the property of West Virginia citizens by creating hazards dangerous to life and property and by degrading the quality of life in the Plaintiffs' local communities.

60. Defendants' tortious mining activities present an actual or probable hazard to public health or safety and pose an actual probable threat of water diminution or pollution.

61. Defendants have failed to minimize the disturbances to the prevailing hydrologic balance at their mine sites and in associated off-site areas.

62. Defendants have failed to stabilize and protect all surface areas, including spoil piles affected by the surface mining operations to effectively control erosion and attendant air and water pollution.

63. Defendants have failed to case seal or otherwise manage boreholes, shafts and wells to keep acid or other toxic drainage from entering ground and surface waters.

64. Defendants have failed to ensure that all debris, toxic materials or materials constituting a fire hazard were treated or buried and compacted, or otherwise disposed of in a manner designed to prevent contamination of ground or surface waters.

65. Defendants have failed to minimize the disturbance of the prevailing hydrologic balance at the mine site and in associated off-site areas and to the quantity and the quality of water in surface and ground water systems both during and after mining operations and during reclamation by: (A) avoiding acid or other toxic mine drainage by such measures as, but not limited to: (i) preventing or removing water from contact with toxic producing deposits; (ii) treating drainage to reduce toxic content which adversely affects downstream water before being released to water courses; and (iii) casing, sealing or otherwise managing boreholes, shafts and wells to keep acid or other toxic drainage from entering ground and surface waters; and (B) conducting mining operations so as to prevent, to the extent possible using the best technology currently available, additional contributions of suspended solids to stream flow or runoff outside the permit area.

66. Defendants have failed, with respect to surface disposal of mine wastes, tailings, coal processing wastes and other wastes in areas other than the mine working

excavations, to stabilize all waste piles in designated areas through construction in compacted layers, including the use of noncombustible and impervious materials.

67. Defendants have failed to ensure that all debris, acid-forming materials, toxic materials or materials constituting a fire hazard are treated or buried and compacted, or otherwise disposed of in a manner designed to prevent contamination of ground or surface waters, and that contingency plans are developed to prevent sustained combustion.

68. Defendants have failed to ensure that all reclamation efforts proceeded in an environmentally sound manner and as contemporaneously as practicable with their surface mining operations.

69. To the extent possible, using the best technology currently available, Defendants have also failed to minimize disturbances and adverse impacts of their operations on fish, wildlife and related environmental values and have failed to achieve enhancement of these resources where it was practicable to do so.

70. Defendants' violations have: (1) caused damage to Plaintiffs' property; (2) resulted in personal injuries to Plaintiffs; and (3) prompted the reasonable need for Plaintiffs to undergo medical monitoring.

71. Plaintiffs have been injured through Defendants' violations and therefore are entitled to damages including reasonable attorney and expert witness fees.

72. The conduct of the Defendants as set forth herein constitutes a violation of the acceptable performance standards and practices established in West Virginia's Surface Coal Mining and Reclamation Act section 22-3-13 .

**COUNT SEVEN – VIOLATIONS OF WEST VIRGINIA SURFACE COAL MINING AND RECLAMATION ACT SECTION 22-3-14**

**(General Environmental Protection performance Standards for the Surface Effects of Underground Mining)**

73. Plaintiffs hereby incorporate paragraphs 1-168.

74. Defendants have failed to protect off-site areas from damages that may result from their mining operations.

75. Defendants have failed to eliminate fire hazards and otherwise eliminate conditions that constitute a hazard to health and safety of the public.

76. Defendants have failed to minimize the disturbance of the prevailing hydrologic balance at the mine site and in associated off-site areas and to the quantity and the quality of water in surface and ground water systems both during and after mining operations and during reclamation by: (A) avoiding acid or other toxic mine drainage by such measures as, but not limited to: (i) preventing or removing water from contact with toxic producing deposits; (ii) treating drainage to reduce toxic content which adversely affects downstream water before being released to water courses; and (iii) casing, sealing or otherwise managing boreholes, shafts and wells to keep acid or other toxic drainage from entering ground and surface waters; and (B) conducting mining operations so as to prevent, to the extent

possible using the best technology currently available, additional contributions of suspended solids to stream flow or runoff outside the permit area.

77. Defendants failed to stabilize all waste piles it created from current operations through construction in compacted layers, including the use of incombustible and impervious materials and has failed to assure that any leachate there from would not degrade surface or groundwater below water quality standards established pursuant to applicable law.

78. To the extent possible using the best technology currently available, Defendants have failed to minimize disturbances and adverse impacts from their mining operation on fish, aquatic life, wildlife and related environmental values, and have not achieved these goals where it was practicable for Defendants to do so.

79. Defendants' violations have: (1) caused damage to Plaintiffs' property; (2) resulted in personal injuries to Plaintiffs; and (3) prompted the reasonable need for Plaintiffs to undergo medical monitoring.

80. Plaintiffs have been injured through Defendants' violations and therefore are entitled to damages including reasonable attorney and expert witness fees.

81. The conduct of the Defendants as set forth herein constitutes a violation of the acceptable standards and practices established in West Virginia's Surface Coal Mining and Reclamation Act section 22-3-14.

**COUNT EIGHT – VIOLATIONS OF WEST VIRGINIA SURFACE COAL MINING AND RECLAMATION ACT SECTION 22-3-24**

## Count Nine- Violations of the West Virginia Groundwater Protection Act, W. Va. Code §§ 22-12-1 et seq

89. Plaintiffs' hereby reassert and incorporate allegations in paragraphs 1-184.

90. Defendants' contamination of the aquifers underlying Rawl, Lick Creek, Merrimac and Sprigg is an on-going and continuing violation of the West Virginia Groundwater Protection Act, W.Va. Code §§ 22-12-1 et seq.

## Count Ten- Violations of the West Virginia Natural Streams Preservation Act, W.Va. Code §§ 22-13-1 et seq

91. Plaintiffs hereby reassert and incorporate allegations in paragraphs 1-186.

92. Defendants' contamination of surface waters from their activities alleged herein constitute violations of the West Virginia Natural Streams Preservation Act, W.Va. Code §§ 22-13-1 et seq.

## Count Eleven- Violations of the West Virginia Water Pollution Control Act §§ 22-11-1 et seq.

93. Plaintiffs hereby reassert and incorporate all allegations contained in paragraphs 1-188.

94. Defendants' contamination of surface waters coursing through Rawl, Merrimac, Lick Creek and Sprigg constitute not only nuisance, but also violations of the West Virginia Water Pollution Control Act §§ 22-11-1 et seq.

## Count Twelve- Violations of the Federal Clean Water Act 33 USCS §§ 1251 et seq.

95. Plaintiffs hereby incorporate and re-assert allegations in paragraphs 1 -190.

96. Defendants act and omissions constitute violation of the "Clean Water Act" meaning the Federal Water Pollution Control Act, P.L. 92-500. [33 USCS §§ 1251 et seq.] enacted on the eighteenth day of October, one thousand nine hundred seventy-two.

## Count Thirteen- Trespass

97. Plaintiffs hereby incorporate and reassert allegations found in paragraphs 1-192.

98. Defendants' acts and omissions leading to the contamination of aquifers and surface waters within the boundaries of the plaintiffs' property constitutes the tort of trespass.

## Count Fourteen- Tort of Outrage

99. Plaintiffs hereby incorporate and reassert allegations found in paragraphs 1-194.

100. Defendants' acts and omissions constitute the tort of outrage.

## Count Fifteen- Unjust Enrichment

101. Plaintiffs hereby incorporate and reassert allegations found in paragraphs 1-196.

102. Defendants' acts and omission constitute unjust enrichment.

**WHEREFORE** the Plaintiffs herein pray for the following relief:

1. Compensation for damage to their property rights and the fair use and enjoyment of their property in an amount determined by the trier of fact.
2. Damages for personal injury in the amount determined by the trier of fact
3. Equitable relief in the form of a court-administered and supervised medical monitoring program to oversee and direct medical surveillance and provide for medical examinations and testing of Plaintiffs and medical monitoring class members.
4. Plaintiffs' costs and disbursements, cost of investigation, attorney fees and other relief as may be available under West Virginia Law including the West Virginia Surface Coal Mining and Reclamation Act.
5. Pre-judgment and post judgment interest on their award.
6. Punitive damages that may be awarded for the intentional, grossly negligent and reprehensible actions on the part of the Defendants.
7. An Order of the Honorable Court to effectuate an abatement of any public nuisances found to exist on properties owned by or contaminated by either of the Defendants.
8. An Order of the Honorable Court awarding costs and fees including reasonable attorney and expert witness fees pursuant to West Virginia's Surface Coal Mining Act.
9. Damages for the loss and enjoyment of their property.
10. Damages for the trespass effectuated by the Defendant's acts and omissions.
11. Damages for Defendants' unjust enrichment.
12. Damages for the Defendants' outrageous conduct.

13. Damages for the Defendants' failure to control mine-related flood waters.

14. Such other and further relief as the court may deem just.

**Respectfully submitted,**

**STEVE BALL;**
**Plaintiffs,**

**By Counsel:**

Kevin Thompson, Esq. (WVSB#5062)
James Casimiro III, Esq. (WVSB#8965)
P.O. Box 11178
Charleston, WV 25339
Telephone: (304) 343-6383
Facsimile: (304) 343-6839

s/

Van Bunch (pro hac vice)
Bonnett, Fairbourn, Friedman & Balint
4041 N. Central Avenue
Phoenix, Arizona 85012
Telephone: (602) 274-1100
Facsimile: (602) 274-1199

IN THE CIRCUIT COURT OF MINGO COUNTY, WEST VIRGINIA

**STEVE BALL;**

| | |
|---|---|
| v. | ) CASE NO.-________ |
| **RAWL SALES AND PROCESSING Company, a West Virginia corporation, and MASSEY ENERGY COMPANY a Delaware corporation,** | ) |
| **Defendants.** | ) |

**CERTIFICATE OF SERVICE**

I hereby certify that on the 17th day of October 2005, I served the foregoing COMPLAINT upon counsel of record and/or agent for service via First Class U.S. Mail as follows:

Mr. Dan Stickler, Esq.
Mr. Bob McCuskey, Esq.
Jackson Kelly
PO Box 553
Charleston, WV 25301

______________________
Kevin Thompson, Esq.

**IN THE CIRCUIT COURT OF MINGO COUNTY, WEST VIRGINIA**

Steve Ball

v.

05-C-380

**Massey Energy, a Delaware Corporation; and**
**Rawl Sales & Processing**

**Serve Defendant Through Counsel:**

**Dan Stickler**
**Jackson Kelly**
**1400 Laidley Tower**
**Charleston, West Virginia 25301**

IN THE NAME OF THE STATE OF WEST VIRGINIA, you are hereby summoned and required to serve upon plaintiffs' attorney, Kevin Thompson, 431 Gravier, Suite 200, New Orleans, Louisiana, an answer, including any related counterclaim you may have, to the complaint filed against you in the above styled civil action. A true copy of the complaint is herewith delivered to you.

You are required to serve your answer within thirty (30) days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint and you will be thereafter barred from asserting in another action any claim you may have which must be asserted by counterclaim in the above styled civil action.

DATED: OCT 19 2005

Grant Preece
Clerk of Court

BY: Cheryl Daniels
Deputy